

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

May 16, 2021

**BY ECF AND EMAIL**

The Honorable Cathy Seibel
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

    Re:    United States v. Bornwakim Pilgrim, 20 Cr. 394 (CS)

Dear Judge Seibel:

    The Government respectfully submits this letter in advance of sentencing of defendant Bornwakim Pilgrim, currently scheduled for May 24, 2021 at 3:45 p.m., and in response to defendant's sentencing memorandum dated May 10, 2021 ("Pilgrim Letter").

    In the early 2000s, the defendant was convicted in quick succession of two narcotics felonies, but he avoided substantial jail time, instead serving just under two years. In 2018, he committed two crimes within just a few months, and once again avoided serious consequences; receiving a probationary sentence. But these light sentences did not incentivize him to lawful conduct. Instead, in 2020 and while on probation, Pilgrim possessed two firearms, as well as quantities of narcotics consistent with re-distribution. Given the facts provable at this time, the only appropriate sentence given the seriousness of the defendant's conduct, promote respect for the law, and afford adequate deterrence, is a sentence of 27 months, the top of the applicable Sentencing Guidelines range.

**A. Instant Offense Conduct and Procedural History**

    On July 12, 2020, a witness alleged to a member of the Yonkers Police Department that the defendant had committed assault and kidnapping at his apartment, while brandishing two firearms. (Presentence Investigation Report ("PSR") ¶ 11). Based on the allegations, officers obtained a state search warrant to search the defendant's apartment. (PSR ¶ 13). In the apartment, officers found a chest of drawers, containing mail addressed to the defendant and two loaded firearms, one of which had the serial number defaced. (PSR ¶ 13). Officers also found a locked safe: when they opened the safe, they recovered drug paraphernalia, more than a thousand dollars in cash, approximately 5.8 grams of crack and approximately 16.7 grams of fentanyl, and identification cards belonging to Pilgrim. (PSR ¶ 13).

    The defendant was initially arrested and charged in the state; ultimately, the United States Attorney's Office adopted the case, charging Pilgrim via complaint on July 22, 2020; he was

brought into federal custody and remanded. On August 5, 2020, a grand jury returned an Indictment against Pilgrim, charging him with being a felon-in-possession, in violation of Title 18, United States Code, Section 922(g); possessing a defaced firearm, in violation of Title 18, United States Code, Section 922(k); and possession of narcotics with intent to distribute, in violation of Title 21, United States Code, Section 841(b)(1)(C).

Pursuant to a plea agreement, Pilgrim pleaded guilty to Count One, the felon-in-possession charge. Under the plea agreement, the parties stipulated that Pilgrim's Sentencing Guidelines were 21 to 27 months'.

### B. Presentence Investigation Report

The Probation Office has calculated the offense level as follows, and as consistent with the plea agreement: (1) pursuant to U.S.S.G. § 2K2.1, the base offense level is 14; (2) pursuant to U.S.S.G. § 2K2.1(b)(4)(B), four levels are added because one of the firearms Pilgrim possessed had an altered or obliterated serial number; and (3) three levels are removed for acceptance of responsibility. In total, the specific offense level is 15. (PSR ¶¶ 19–28).

Pilgrim has three criminal history points. Pilgrim was convicted of a narcotics felony from 2000 for which he was sentenced to 12 months' and a narcotics felony from 2004 for which he was sentenced to 9 months', but neither of those count given their age. (PSR ¶¶ 30–31). In March 2018, he was charged with and later convicted of Obstruction of Governmental Administration and sentenced to a conditional discharge; that sentence does not count for criminal history purposes pursuant to U.S.S.G. § 4A1.2(c)(1). (PSR ¶ 32). In July 2018, he was charged with and later convicted of misdemeanor narcotics possession, and sentenced to 3 years' probation; he was on probation when he committed the instant offense. (PSR ¶ 33).

This offense level and criminal history category lead to a Guidelines range of 21 to 27 months' imprisonment. (PSR ¶ 85.) The Government agrees with the Probation Office's calculation. (PSR ¶ 7(c).)

The Probation Office has recommended that the Court sentence the defendant to 21 months' imprisonment. (PSR p. 18.)

### C. The Court Should Sentence Pilgrim to a Sentence of 27 Months'

Bornwakim Pilgrim was not deterred from criminal conduct after two felony convictions in the early 2000s. A probationary sentence for narcotics possession in 2018 similarly did little to stop him. Instead, while on probation, he possessed two firearms, one of which was defaced, and narcotics for re-distribution. Given these facts, the appropriate sentence under the Section 3553(a) factors is a sentence at the top of the Guidelines range, namely a sentence of 27 months' imprisonment.

Such a sentence would reflect the seriousness of Pilgrim's conduct. Every day, guns lead to violence and death in places like Yonkers. The defendant's unlawful possession of two loaded firearms could do nothing but contribute to that violence, and endanger other people. Further,

Hon. Cathy Seibel   Page 3
May 16, 2021

those who unlawfully possess firearms and ammunition generally use them for criminal or other illicit purposes. And while the Government agreed to a negotiated plea agreement wherein the defendant did not plead to Count Three of the Indictment, the Court should consider the seriousness of Pilgrim's narcotics possession in crafting an appropriate sentence under 3553(a). Pilgrim possessed re-distribution quantities of both crack cocaine and deadly fentanyl, in the midst of the national opioid crisis.

A sentence of 27 months would also be appropriate in light of the need for specific and general deterrence. Pilgrim has been criminally prosecuted and punished before, but those sentences did nothing to deter him from the dangerous criminal conduct he committed in this case. And he was convicted of another crime, soon before the instant offenses, and given a probationary sentence. The Court should deter him and others by imposing a substantial sentence, namely the top of the Guidelines, to try to ensure he does not re-offend like this again.

Pilgrim's sentencing submission does not merit the lenient sentence that he requests.

First, the Government provides additional context regarding the 2017 incident in which Pilgrim was shot, which is not as mitigating as suggested by Pilgrim (during Rule 16 disclosures, the Government provided discovery to the defendant regarding this incident). In sum and substance, in the early morning hours of July 1, 2017, Pilgrim attended a block party on the street near 14 Coyle Place in Yonkers. Pilgrim and a man named James Bowen began arguing; Pilgrim pulled out a knife and began stabbing Bowen. Bowen was carrying a gun near his ankle, and after Pilgrim had repeatedly stabbed him, pulled the gun and shot Pilgrim. Bowen was seriously injured by Pilgrim's attacks, though Pilgrim was never prosecuted for assault.[1]

Second, while Pilgrim's family circumstances are undeniably tragic, they provide no justification for his serious criminal offenses in this case.

Finally, Pilgrim requests a more lenient sentence based upon the particularly difficult conditions of confinement during the COVID-19 pandemic. Pilgrim Letter 4. The Government respectfully disagrees with this analysis. While the Government absolutely agrees that Pilgrim's pre-sentencing conditions are more difficult than those of a defendant before the pandemic, this argument would militate in favor of more lenient sentences for any defendant detained or incarcerated since the onset of COVID-19. Courts throughout this district have generally rejected such reasoning (albeit usually in the context of motions for compassionate release). *United States v. Bryant*, No. 06-CR-17-LTS, 2021 WL 738838, at *3 (S.D.N.Y. Feb. 24, 2021) (conditions of confinement during COVID "are not unique to Mr. Bryant and do not militate strongly in favor of finding there are extraordinary and compelling reasons for a sentence reduction."); *United States v. Denault*, No. 11 CRIM. 121-7 (GBD), 2020 WL 2836780, at *2 (S.D.N.Y. June 1, 2020) (rejecting argument for compassionate release grounded in conditions of confinement given the "seriousness of the offense and need for adequate deterrence."); *United*

---

[1] Pilgrim's statement in the PSR that the shooter "was never arrested," (PSR ¶ 58), is inaccurate: this Office charged Bowen with being a felon-in-possession, and Bowen was convicted on May 14, 2021. *United States v. James Bowen*, 18 Cr. 205 (NSR).

Hon. Cathy Seibel  Page 4
May 16, 2021

*States v. Brooks*, No. 11-CR-206-LTS, 2020 WL 6946589, at *2 (S.D.N.Y. Nov. 24, 2020) (same).

        Respectfully submitted,

        AUDREY STRAUSS
        United States Attorney

By: /s Samuel L. Raymond
     Samuel L. Raymond
     Assistant United States Attorney
     (212) 637-6519

cc: Sam Braverman, Esq.